Benjamín Juarbe Martínez, recurrente, *v.* El Registrador de la Propiedad, Sección de Aguadilla, recurrido.

*Número:* RG-2001-1        *Resuelto:* 20 de marzo de 2002

*Benjamín Juarbe Martínez* y *Wilfredo Muñoz Román*, abogados de la parte peticionaria; *José M. Román Monroig*, abogado de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR CORRADA DEL RÍO emitió la opinión del Tribunal.

I

Mediante la Resolución emitida por la Administración de Reglamentos y Permisos (en adelante A.R.Pe.) el 8 de noviembre de 1996, los esposos José Antonio Velázquez González y Yolanda Medina Flecha (en adelante el matrimonio Velázquez Medina) obtuvieron un permiso para segregar de una finca de su propiedad[1] (en adelante la finca Núm. 20,284), un solar de 1,965.2 metros cuadrados. El solar segregado fue vendido a la Sra. Juana Flecha Pérez

---

[1] La finca estaba inscrita al asiento 20,284, folio 93 del tomo 375 de Isabela, Registro de la Propiedad de Aguadilla.

(en adelante la señora Flecha Pérez) mediante la Escritura Núm. 263 otorgada el 30 de diciembre de 1996 ante la notario Laura M. Vega Miranda.[2] La señora Flecha Pérez no presentó la referida escritura para su inscripción en el Registro de la Propiedad.

El 30 de julio de 1997, el matrimonio Velázquez Medina sometió ante A.R.Pe. un plano sustituto para solicitar que se dejara sin efecto la aprobación del solar segregado para que, en su lugar, le aprobaran la segregación de dos solares de la misma finca Núm. 20,284. Dicho plano sustituto fue aprobado por A.R.Pe. mediante una Resolución emitida el 26 de agosto de 1997, disponiéndose en dicha resolución que se dejaba sin efecto la aprobación de la segregación anterior.

El matrimonio Velázquez Medina, utilizando el plano sustituto aprobado por A.R.Pe., mediante Escritura Núm. 135 otorgada ante el notario Benjamín Juarbe Martínez el 24 de noviembre de 1998, segregó de la finca 20,284 dos solares. El primer solar, con una cabida de 1,965.2 metros cuadrados, fue inscrito en el Registro de la Propiedad a favor del matrimonio Velázquez Medina, finca número 23,341, cuya inscripción se practicó el 19 de enero de 2000.[3] El segundo solar, con una cabida de 674.4 metros cuadrados, fue inscrito en el Registro de la Propiedad, finca Núm. 23,340, en igual fecha. Subsiguientemente, fue vendido al Sr. Carlos Antonio Angueira Alameda mediante

---

[2] El solar segregado tenía la descripción siguiente:

"[r]ústica: Solar radicado en el Barrio Guayabos de Isabela, Puerto Rico marcado en el Plano de inscripción con el número (uno) '1', compuesto de mil novecientos sesenta y cinco punto dos metros (1965.2 m), equivalentes a cero punto cinco mil cuerdas. En lindes por el Norte, en veintinueve punto novecientos sesenta y cuatro metros (29.964 m) con Ana L. González; al Sur, en treinta punto cero noventa y cinco metros (30.095 m) con remanente de la finca de la cual se segrega; Al Este en setenta y dos punto trescientos noventa y seis metros (72.396 m) con Juan R. Tavárez; y al Oeste en sesenta y dos punto ciento ochenta y cinco metros (62.185 m) con acceso de [sic] uso público." (Énfasis suprimido.) Recurso gubernativo, pág. 2.

[3] La escritura se presentó en el Registro de la Propiedad el 23 de diciembre de 1998. Este solar tenía idéntica descripción al solar segregado en virtud de la primera Resolución de A.R.Pe. (en adelante A.R.Pe.), el cual había sido vendido a la señora Flecha Pérez por medio de la Escritura Pública Núm. 263.

Escritura Núm. 17 otorgada ante el notario Benjamín Juarbe Martínez.

Así las cosas, el 19 de marzo de 1999 la señora Flecha Pérez presentó para su inscripción en el Registro de la Propiedad la Escritura de Segregación y Compraventa Núm. 263 otorgada el 30 de diciembre de 1996; es decir, la otorgada en virtud del permiso de segregación del solar de 1,965 metros cuadrados que posteriormente fue dejado sin efecto.

Entretanto, el matrimonio Velázquez Medina segregó un solar de 700.00 metros cuadrados de la finca Núm. 23,341. Éste fue vendido al Sr. Manuel Ocasio Rodríguez mediante la Escritura Pública Núm. 78, otorgada el 5 de junio de 1999 ante el notario Benjamín Juarbe Martínez. Presentada la referida escritura para su inscripción en el Registro de la Propiedad el 12 de agosto de 1999, el Registrador de la Propiedad notificó el defecto siguiente:

> Según el Registro la finca de 1,965 m/c [finca número 23,341] consta inscrita a favor de Juana Flecha Pérez vendida ésta por José A. Velázquez y su esposa. Recurso gubernativo, pág. 5.

De esta notificación el Lcdo. Benjamín Juarbe Martínez solicitó, oportunamente, un recurso de recalificación. Sin embargo, el Registrador de la Propiedad sostuvo la calificación original y extendió la correspondiente anotación preventiva de denegatoria. Contra dicha denegatoria el licenciado Juarbe Martínez, por medio de su abogado, Lcdo. Wilfredo Muñoz Román, interpuso el recurso gubernativo ante nos para alegar que el Registrador de la Propiedad, Sección de Aguadilla, había errado al aplicar las normas de interpretación contenidas en la Ley Hipotecaria y del Registro de la Propiedad (en adelante la Ley Hipotecaria) referentes al tracto sucesivo, principio de especialidad, principio de legalidad, faltas que impiden la inscripción y solicitud de documentos complementarios.

Aduce el recurrente, en síntesis, que el Registrador de la Propiedad inscribió a favor de la señora Flecha Pérez la finca Núm. 23,341, como si se tratara de la misma finca que ésta había adquirido por medio de la Escritura Pública 263 otorgada el 30 de diciembre de 1996. Añade que la Resolución de A.R.Pe. que se utilizó en la escritura presentada por la señora Flecha Pérez había sido revocada mediante la aprobación del plano sustituto en la Resolución posterior de A.R.Pe., situación de la cual el Registrador de la Propiedad tenía conocimiento toda vez que, con dicho plano sustituto, se habían segregado e inscrito los dos solares de la finca 20,284([4]) con anterioridad a que la señora Flecha Pérez presentara su título para inscripción.

El Registrador de la Propiedad ha comparecido, lo cual nos coloca en posición de resolver. Sin embargo, nos corresponde evaluar la legitimación del recurrente, licenciado Juarbe Martínez, para presentar el recurso de autos.

II

El Art. 76 de la Ley Hipotecaria([5]) dispone:

> Todo interesado podrá recurrir ante el Tribunal Supremo de Puerto Rico contra la calificación final del documento hecha por el registrador denegando el asiento solicitado.
> También podrá el interesado recurrir gubernativamente cuando habiéndose inscrito el título presentado, el registrador se negase a reconocer en el asiento, cuando le sea solicitado, todo el valor y efecto legal del título. 30 L.P.R.A. sec. 2279.

A su vez, se entenderá por interesado en asegurar el derecho que se desea inscribir todo poseedor de un derecho o título aunque no conste en el documento que se presenta y cuya inscripción dependa de la inscripción de éste. R.G. Sec. 62.3 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A.

---

([4]) Entiéndase, los Solares Núms. 23,340 y 23,341.

([5]) 30 L.P.R.A. sec. 2279.

sec. 2003, edición especial de 1988 (en adelante Reglamento General); *Chase Manhattan Bank, N.A. v. Registrador*, 136 D.P.R. 650 (1994).

En este recurso comparece ante nos el licenciado Juarbe Martínez, representado por su abogado. Arguye que es parte interesada por ser el presentante y notario autorizante de la Escritura Núm. 78 otorgada el 5 de junio de 1999, cuya inscripción depende de este recurso. Sin embargo, ¿tiene el notario autorizante legitimación activa para, a nombre propio, presentar un recurso gubernativo?; ¿es parte interesada, a la luz de la actual Ley Hipotecaria, de modo que posea personalidad para interponer un recurso gubernativo contra la calificación final del registrador respecto a los documentos ante él otorgados? Entendemos que no. Veamos.

Bajo la antigua Ley Hipotecaria de 1893,[6] imperaba la norma referente a que los notarios autorizantes de documentos públicos no constituían parte interesada, por lo cual carecían de personalidad para interponer recursos gubernativos contra las calificaciones que hiciese el registrador respecto a los documentos otorgados ante ellos. Véanse: *Mena v. Registrador*, 80 D.P.R. 783 (1958); *Roig v. Registrador*, 18 D.P.R. 11 (1912); *Más v. Registrador*, 16 D.P.R. 9 (1910). Se entendían como interesados, entre otros, al transmitente del derecho, quien lo adquiría, quien tuviese interés en asegurar el derecho, o a los representantes, legítimos o voluntarios de aquéllos. Los notarios estaban expresamente excluidos de la rúbrica general de interesados, salvo para los casos en que la suspensión o denegatoria de la inscripción se fundara en defectos del instrumento, en cuya hipótesis sí estarían los notarios directamente interesados, admitiéndose entonces su legitimación procesal activa. E. Vázquez Bote, *Elementos de de-*

---

[6] 30 L.P.R.A. ant. sec. 31 *et seq.*

*recho hipotecario puertorriqueño*, 1era ed., Madrid, Ed. Lex, 1973. Véase, además, *Quiñones Núñez v. Registrador*, 104 D.P.R. 194 (1975).[7]

■ Con la aprobación de la actual Ley Hipotecaria y su Reglamento General en 1979,[8] se recogió expresamente dicha prohibición al disponer la Sec. 88.1 del Reglamento General.[9]

> [e]l recurso gubernativo sólo podrá ser promovido por el interesado en la inscripción o sus legítimos representantes o mandatarios. *Los notarios que hubieren autorizado los instrumentos a los que se les haya señalado defecto no podrán recurrir en su propio nombre.* (Énfasis suplido.)[10]

■ Apunta el Art. 14 del Código Civil, *supra*,[11] que cuando la ley es clara y libre de toda ambigüedad, su letra no debe ser menospreciada. "Cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa." *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 545 (1996). "[E]l alcance de un lenguaje sencillo y absoluto en un estatuto no será restringido al interpretarlo como que provee algo que el legislador no intentó proveer, y el así resolverlo equivaldría a invadir las funciones de la Asamblea Legislativa". *Lasalle v. Junta Dir. A.C.C.A.*, 140 D.P.R.

---

[7] La Ley Hipotecaria española, al tratar el recurso gubernativo, dispone que éste puede ser entablado por el notario autorizante del título, en todo caso. La explicación para esta disposición recae en que cuando el registrador suspende o deniega la inscripción de un título es porque estima que éste adolece de faltas. Si el título es un instrumento público, la calificación del Registrador encierra, aunque sea implícitamente, una especie de censura para el notario autorizante, cosa que inevitablemente ha de ser de interés personal y profesional para éste. *Quiñones Núñez v. Registrador*, 104 D.P.R. 194 (1975).

[8] Ley Núm. 198 de 8 de agosto de 1979 (30 L.P.R.A. sec. 2001 *et seq.*).

[9] 30 L.P.R.A. sec. 2003-88.1, edición especial.

[10] Para una crítica de dicho precepto, véase, E. Vázquez Bote, *Tratado teórico, práctico y crítico de derecho privado puertorriqueño*, 1ra ed., San Juan, Ed. Butterworth, 1992, Vol. XV, T. II, págs. 347–349.

[11] 31 L.P.R.A. sec. 14.

694, 696 (1996). Véase *Caguas Bus Line v. Sierra, Comisionado*, 73 D.P.R. 743, 750 (1952).

> Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable. *Alejandro Rivera v. E.L.A.*, supra, pág. 545.

■ En virtud de lo anteriormente expuesto, concluimos que los notarios autorizantes de los documentos públicos, per se, no son parte interesada con personalidad para interponer un recurso gubernativo contra las calificaciones que hiciere el Registrador de la Propiedad respecto a los documentos ante sí otorgados; esto, mediante prohibición expresa de la Ley Hipotecaria y su Reglamento General. Un notario carece de legitimación activa para, a nombre propio, presentar un recurso gubernativo.

Habiéndose determinado que el recurrente carece de legitimación o capacidad jurídica para comparecer ante nos en este recurso, *se desestima el recurso gubernativo interpuesto.*

*Se dictará sentencia de conformidad.*

El Juez Presidente Señor Andréu García y el Juez Asociado Señor Hernández Denton concurrieron sin opinión escrita.